IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TERRITHA R. REED**                                                                                            **PLAINTIFF**

vs.                                              **Case No. 4:20 cv 1431 JM**

**ARKANSAS HIGHWAY POLICE**                                                           **DEFENDANT**

### ORDER

This is an action for gender discrimination and hostile work environment. Pending is a motion to dismiss for failure to state a claim filed by Defendant Arkansas Highway Police (AHP). (Doc. No. 3). Plaintiff Territha Reed has responded. For the reasons stated below, the motion to dismiss is granted.

Standard. A complaint must contain "a short and plain statement of the claim that the pleader is entitled to relief" to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 8(a)(2). The complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and must also contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. *Id.*

In the context of employment discrimination, "[t]he prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49 (1st Cir. 2013)). However, the elements of a prima facie case are still relevant to a plausibility determination. *Id.* The Eighth Circuit has explained:

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, *the complaint must include sufficient factual allegations to provide the grounds on which the claim rests*. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

*Id. (*quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (alteration in original) (emphasis added) (quotations and citations omitted).

The complaint. The complaint (Doc. 1) contains the following allegations. Plaintiff is an African American female who has been employed as a certified law enforcement officer by AHP since July of 2008. She was promoted to the position of sergeant "due to her exemplary performance" (¶ 10) and is currently a patrol sergeant with the Little Rock Highway Police office. A majority of the 150 AHP officers are white males.

Plaintiff is supervised by Lt. Brad Perkins, a white male. Lt. Eddie Bush, also a white male, often "interjected himself in the plaintiff's line of supervision." (¶ 14). He often yelled at her and "tried on a few occasions to get her written up for things that were not warranted." (¶ 16) Bush accused Plaintiff of hanging up on him in January of 2017 and drove from Lake Village to Little Rock to hold a "mandatory meeting" with Plaintiff and two other sergeants to discuss the alleged hang up; he was hostile to her in the meeting. (¶¶ 17-19). She complained about the hostility she "often endured" from Bush to her immediate supervisors.

Plaintiff alleges that "she was not allowed to exercise her role as a supervisor," and that she was "prevented" from issuing disciplinary actions to white male officers. (¶¶ 21-22). Specifically, she alleges that there was an incident on January 1, 2020 in which she was involved in a foot chase with other officers that ended up with the individual being chased jumping into

the river. Plaintiff prevented the other officers from following the individual into the river, "opting instead to wait on the individual to exit the river." Capt. William Scott, an African American male, showed up at the scene, talked to another officer, then requested that Plaintiff meet with him the next day. At the meeting, Scott repeatedly asked Plaintiff whether her supervisor, Perkins, had told her to call off the chase. He had not. Scott kept questioning her decision and said, "I don't want you busting these guys' balls for doing their job." He also told her, "I don't want you to supervise like Joy Bean, scared and lacking confidence." (¶¶ 23-32). Scott yelled at her for giving a subordinate male officer a difficult time about his inspections. Plaintiff alleges he constantly yells at her and "treats her in a demeaning fashion while not doing the same for male employees." (¶ 35).

When Plaintiff met with seven officers in March 2020 about their annual reviews, Scott "met with the plaintiff and went line-by-line over each evaluation, and required the plaintiff to change some performance ratings, ensuring that the male officers receive every credit." (¶ 36). Scott also made Plaintiff remove some verbal reprimands that she had noted in some of the white officers' performance evaluations. Plaintiff alleges that Scott once advised Plaintiff to write an email about a subordinate officer who had reported late to work then later yelled at her for sending the email.

Plaintiff further alleges that "[m]ale subordinates are allowed to be insubordinate to the plaintiff without any repercussions." (¶ 40). When she requested a meeting with "the major" to get help from the harassment, he gave her a book on leadership. Plaintiff alleges that Scott treats her male counterpart differently, that he is supportive of him while constantly demeaning her and yelling at her. (¶ 43).

Plaintiff's EEOC charge attached to the complaint states:

> I was hounded, yelled at, and cursed at by my Captain following an incident on January 1, 2020. I continued to be treated the same though April 2020. The Captain questions every time I'm seen speaking with the Lieutenants. The Captain has yelled at me over the radio and sent emails to the entire group remanding me. The Captain covers for some of my officers he has personal relationships with. He excuses their insubordination. He treats the male Sergeant totally different than he treats me. I discussed the issue with my Captain, but things did not improve. I escalated my complaint to the Major, then the Chief, then to Headquarters. We met for over 8 hours twice discussing careers and only about 10 minutes were spent addressing my issues. Then I met again with the Chief and he took notes and after talking at length I agreed the matter was resolved about May 4, 2020.

(Doc. No. 1, p. 10).[1]

Timeliness of Plaintiff's Complaint.   Defendant's argument that Plaintiff failed to file her gender discrimination complaint within the time prescribed by Title VII is without merit. Plaintiff's complaint was filed on December 8, 2020, 91 days after the EEOC issued the right-to-sue letter on September 8, 2021.   "It is presumed that a plaintiff will receive the notice three days after the mailing date. Fed. R. Civ. P. 6(d)." *Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 736 (8th Cir. 2018).

Prima facie case of gender discrimination.   In her response to the motion to dismiss, Plaintiff does not argue any direct evidence of discrimination.   To establish a prima facie case of gender discrimination as required to advance through the burden-shifting framework of *McDonnel Douglas*, a plaintiff must show that: (1) she was a member of a protected group; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the facts give rise to an inference of unlawful gender discrimination. *E.g., Fiero v. CSG Sys., Inc.*, 759

---

[1] In her complaint, Plaintiff alleges that her charge of discrimination with the EEOC was based on her termination of employment, but the charge attached as Exhibit A and her other allegations show this to be an error.   (Doc. 1, ¶ 60).

F.3d 874, 878 (8th Cir. 2014).

Defendant argues that Plaintiff has failed to allege any factual matter from which she could establish the third prong, that she suffered an adverse employment action.  "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *Spears v. Missouri Dep't of Corr. & Hum. Res.*, 210 F.3d 850, 853 (8th Cir. 2000) (citation omitted). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not."  *Id.* (citations omitted).

In addition to the allegations set forth above, Plaintiff alleges that "[she] was consistently subjected to varied terms and conditions of her employment with the defendant as [compared to] other similarly situated male employees." (Doc. 1, ¶ 46, repeated at ¶52.)   Defendant argues that this is a conclusory allegation.   Plaintiff only argument in her response on this issue is that "[t]he plaintiff's working conditions were altered in such a manner, that it made her conditions intolerable, based on her sex" and that "due to the discriminatory treatment that she endures, she has suffered mental anguish and embarrassment, resulting in damages to her." (Doc. No. 7, p. 11).

These allegations and arguments fail to sufficiently plead that Plaintiff suffered an adverse employment action under Eighth Circuit precedent.   She is still employed in the same capacity as she was during of the challenged conduct.   She does not allege that her future career prospects have been affected.   There are no allegations to support a claim that Plaintiff suffered a material change in employment status.   The motion to dismiss Plaintiff's claim for

discrimination is granted.

<u>Hostile work environment</u>.   "To establish a prima fac[i]e case that she was subjected to a hostile work environment, [plaintiff] must show that (1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and her protected group status; and (4) the harassment affected a term, condition, or privilege of employment."  *Hairston v. Wormuth*, 6 F.4th 834, 841 (8th Cir. 2021). It is the fourth element that Defendant bases its motion on.

"To raise a triable fact on the fourth element, the claim-triggering conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 663 (8th Cir. 2021).   "Although the Supreme Court's precedent is clear that 'Title VII comes into play before the harassing conduct leads to a nervous breakdown,' our Eighth Circuit precedent sets a high bar for conduct to be sufficiently severe or pervasive in order to trigger a Title VII violation."  *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir.), *cert. denied,* 141 S. Ct. 894, (2020) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). The Eighth Circuit has defined an objectively offensive environment as "one that a reasonable person would find hostile or abusive, examining all of the circumstances, such as 'the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct [is so severe or pervasive that it] unreasonably interfered with the employee's work performance.'" A*nderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (quoting *Bainbridge v. Loffredo Gardens, Inc.,* 378 F.3d 756, 759 (8th Cir.2004)).

The allegations in the complaint recited above are not sufficient to satisfy the plausibility

requirement that Plaintiff's alleged harassment affected a term, condition, or privilege of her employment with AHP.   That her captain questioned her decision about calling off a foot chase, even rudely and loudly, when that had not been sanctioned by her supervisor; that her decisions about disciplining or evaluating her subordinate officers was monitored and challenged by her captain; that in response to her complaints about insubordination by the male officers she supervises, she was given a book on leadership; that she was reprimanded publicly while others were not—these allegations do not chin bar set and maintained by the Eighth Circuit.   There are no factual allegations that any term, condition, or privilege of Plaintiff's employment were affected.

Conclusion.   Defendant's motion to dismiss (Doc. No. 3) is GRANTED, and Plaintiff's complaint is dismissed with prejudice. [2]   A separate judgment will be entered.

Dated this 17th day of September, 2021.

_____
UNITED STATES DISTRICT JUDGE

---

[2] "[T]he Eighth Circuit has held that, under Title VII, a dismissal without prejudice operates to leave a plaintiff as if no action had been filed. *Id.* (citing *Moore v. St. Louis Music Supply Co., Inc.*, 539 F.2d 1191, 1194 (8th Cir. 1976)). Thus, any dismissal of a Title VII or ADEA case that occurs, as it did here, more than 90 days after the right to sue letter issued is, in substance, a dismissal with prejudice." *Faulkner v. Townsell*, No. 4:18-CV-00353 KGB, 2020 WL 2818512, at *8 (E.D. Ark. May 28, 2020).